**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

FILED
U.S. DIST. COURT
MIDDLE DIST. OF LA

2016 SEP 29  PM 4: 04

SIGN_____
BY DEPUTY CLERK

Sherri Johnson

**name of plaintiff(s)**

**CIVIL ACTION**

**versus**

Crescent Bank & Trust, Sadie Williams,
Gary Solomon

**NO.**_____)

**name of defendant(s)**

## COMPLAINT

1. **State the grounds for filing this case in Federal Court (include federal statutes and/or U. S. Constitutional provisions, if you know them):**

   Title VII of the Civil Rights of 1964, 42 U.S.C.A Sec2000e("Title VII"), 29 CFR Part 516, 29CFR 778.415 through 778.421, Louisina Wage Payment Act

2. **Plaintiff,** Sherri Johnson **resides at**

   1680 O'Neal Lane , Baton Rouge ,
   **street address**            **city**

   East Baton Rouge , LA , 70810 972-821-8459
   **parish**      **state**   **zip code**   **telephone number**

   **(if more than one plaintiff, provide the same information for each plaintiff below)**

   Gary Solomon

3. **Defendant,** _____ **lives at, or**

   **its business is located at** 1100 Poydras St. Suite 100 ,
                                  **street address**

   New Orleans , New Orleans , LA
   **city**         **parish**      **state**

   70163 , 504-556-5950 .
   **zip code**   **telephone number**

**(if more than one defendant, provide the same information for each defendant below)**

Sadie Williams
7290 Bluebonnet Blvd. Suite 600
Baton Rouge, LA 70810
866-208-8288

4.    **Statement of claim ( State as briefly as possible the facts of your case.  Describe how each defendant is involved.  Include also the names of other persons involved, dates, and places.  Be as specific as possible.  You may use additional paper if necessary):**

Crescent Bank & Trust, Sadie Williams, and Gary Solomon violated Federal laws by changing customer contracts w/o their knowledge, allowed sexual harassment, racial intimidation, violated civil rights.

5.    **Prayers for Relief (list what you want the Court to do):**

a.    10 years annual salary and to be made whole

b.    $5,000,000 and other compensatory or statutory remedies relief available

c.    A formal apology letter admitting complaints were ignored & mishandled

d.    $500,000 relief due to endangerment due to lack of training

I (we) hereby certify under penalty of perjury that the above petition is true to the best of my (our) information, knowledge, and belief.

Signed this    September    day of    29    , 20 16

*Sherri John*
*1680 O'Neal Lane*
*Baton Rouge La. 70810*

**(signature of plaintiff (s))**

1  Sherri Johnson
   1680 O'Neal Lane
2  Baton Rouge, LA 70810
   972-821-8459
3  Sherrimm1023@gmail.com

4              UNITED STATES DISTRICT COURT
               MIDDLE DISTRICT OF LOUISIANA
5

6  SHERRI JOHNSON,                    Case No.: _-CV-____ (__) (__)

7          Plaintiff,

8  vs.                                **COMPLAINT**

9  CRESCENT BANK & TRUST LLC, SADIE   **JURY TRIAL REQUESTED**
   WILLIAMS, GARY SOLOMON
10
           Defendant
11 Plaintiff Sherri Johnson ("Ms. Johnson" or "Plaintiff"), qui tam, Crescent Bank & Trust ("CB&T" or

12 "Defendant") alleges as

13 follows:

14                    **NATURE OF THE ACTION**

15    1.  Ms. Johnson brings this action against 'CB&T' to redress unlawful racial intimidation, sexual

16        Harassment, lack of required training subject to the banking industry, subsequent hostile

17        conditions and privileges of her employment in violation of

18

19 Title VII of the Civil Rights of 1964, 42 U.S.C.A §2000e ("Title VII"); 'CB&T' is in violation of federal

20

21 law regarding Accurate Record Keeping 29 CFR Part 516; in violation of over-time pay as prescribed in 29;

22 CFR 778.415 through 778.421; Louisiana Wage Payment Act ("LWPA"). *Davis v. St. Francisville Country*

23 *Manor, L.L.C.*, 2013 La. App. LEXIS 2241, 1-2 (La.App. 1 Cir. Nov. 1, 2013); 'CB&T' is in violation of

24

25                Fair Labor Standards Act 29 CFR Chapter V

26
27
28

| Type of Violation | Statutory Citation | CFR Citation | Maximum Civil Monetary Penalty before 8/1/2016 | Maximum Civil Monetary Penalty after 8/1/2016 |
|---|---|---|---|---|
| Violation of child labor standards (sec 212 or 213(c)) resulting in serious injury or death | 29 USC 216(e)(1)(A)(ii) | 29 CFR 579.1(a)(1)(i)(B) | $50,000 | $54,910 |

29
30
31
32

COMPLAINTJURY TRIAL REQUESTED - 1

| Willful or repeated violation of child labor standards (sec 212 or 213(c)) resulting in serious injury or death. | 29 USC 216(e)(1)(A)(ii) | $100,000 | $109,820 |
|---|---|---|---|

2.   Specifically, Ms. Johnson suffered racial slurs and racial intimidation at the hands of Manager Jason Gannon even after addressing and reporting the hostile work environment.

3.   CB&T fails to pay male and female employees equal wages in violation of the

Federal Equal Pay Act, 29 U.S.C. § 206(d) (the "EPA")

4. Beneath the veneer of a world-class financial institution, CB&T treats their female

employees as second-class citizens. Plaintiff Ms. Johnson is no exception.

Ms. Johnson earned substantially less than similarly situated males solely because she was a woman who

did not accept sexual advances.

5. This earnings disparity is a result of, among other factors, CB&T's invalidated

company- wide policies and practices that govern compensation, the distribution of hourly wages, and the

lack of proper accountability measures to ensure fairness.

6. As more specifically set forth herein, CB&T's discriminatory animus towards

Ms. Johnson because she is a woman has resulted in diminished commercial opportunities,

marginalization, excluding her from business functions, meetings and information, discrediting

her efforts, paying her grotesquely lower than and disparately from her similarly situated male

peers and ultimately destroying her career at CB&T with the implication of ruining her future

professional participation within the financial services industry.

7. In addition to damages suffered as a consequence of CB&T's unlawful

discrimination, Ms. Johnson alleges that CB&T retaliated against her in violation of both Section 806

of the Sarbanes-Oxley Act of 2002 ("SOX") and the protective whistleblower provisions of the

Dodd-Frank Wall Street Reform and Consumer Protection Act (15 U.S.C. § 78u-6, Section

922(h) ("Dodd-Frank").

COMPLAINTJURY TRIAL REQUESTED - 2

8. Specifically, Ms. Johnson was retaliated against for her good faith and bona fide complaints concerning unethical and unlawful actions undertaken by CB&T Supervisors, Managers, and employees, which complaints were blown off, ignored and disregarded by CB&T's senior management, compliance and legal divisions.

9. Ms. Johnsons' retaliatory accusation started in close proximity in time to her complaints as a Whistleblower regarding customer contracts being altered without their knowledge.

10. Despite her stellar professional qualifications, proven commercial skills, capabilities and competences, and unquestioned outstanding personal moral and ethical character spanning her long career in the financial services sector and on the Healthcare Industry, Ms. Johnson experienced blatant gender bias, racial intimidation, discrimination, and lack of paid hours for time spent performing CB&T duties.

11. This adversity and career setback was further aggravated by her whistleblower actions and complaints when she insisted on adhering to the CB&T rules of business ethics and by reporting to her appropriate managers serious legal, ethical, business practices, regulatory and policy violations that Ms. Johnson witnessed first-hand on numerous occasions which directly resulted in her forced resignation.

12. CB&T intentionally and deliberately discriminated and retaliated against Ms. Johnson as a consequence of her adhering to the law and her ethical, lawful, and industry-accepted, duty bound obligations following the mantra, "If you see something, say something".

13. At all times relevant herein, Defendant's employees, managers, and Human Resource specialists acted at the behest of Defendant during the course, and within the scope, of their employment with Defendant.

14. Ms. Johnson seeks compensatory, liquidated, and punitive damages, the benefits she was denied, injunctive and declaratory relief, and appropriate legal and equitable relief, including liquidated damages and attorneys' fees.

COMPLAINTJURY TRIAL REQUESTED - 3

15. Ms. Johnson reserves the right to enroll counsel and subpoena all relevant parties, witnesses

## PARTIES

16. Plaintiff Ms. Johnson is a woman who lives at 1680 O'Neal Lane Baton Rouge, LA 70810. She is a citizen of the United States.

17. Upon information and belief, Defendant CB&T is a Delaware Corporation doing business within the state of Louisiana 1100 Poydras St. Suite 100 New Orleans, LA 70163, Virginia, and throughout the United States.

18. Upon information and belief, Defendant CB&T maintains control, oversight, and direction over the operation of its facilities, including its employment practices.

19. During all relevant times, Defendant CB&T was Plaintiffs' employer within the meaning of all applicable statutes.

## JURISDICTION AND VENUE

20. This Court has federal question jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 1343, respectively, and 15 U.S.C. § 78u- 6(h)(l )(B)(i).

21. This court has jurisdiction of Plaintiff s state law claims pursuant to 28 U.S.C. § 1367(a), because the state law claims arise from a common nucleus of operative facts with the federal claims and are so related to Plaintiff s federal claims that they form a part of the same case or controversy between the parties under Article III of the United States Constitution.

## ADMINISTRATIVE PROCEDURES

22 Ms. Johnson filed a charge of discrimination, racial intimidation, and sexual harassment with the Equal Employment Opportunity Commission ("EEOC").

23. Ms. Johnson filed a Complaint with the Department of Labor

COMPLAINTJURY TRIAL REQUESTED - 4

("DOL") alleging whistleblower retaliation in violation of SOX, non-payment of hourly wages, non-payment of earned Paid Time Off, non-payment of over-time hours worked, child labor violations due to lack of training.

24. Any and all other prerequisites to the filing of this suit have been met.

## FACTS COMMON TO ALL COUNTS

## PERSONAL AND PROFESSIONAL BACKGROUND

25. Ms. Johnson is a female United States citizen and is protected under the Federal, State and City anti-discrimination statutes protecting employees.

26. Ms. Johnson is a single mother and sole income in the household.

All directly quoted statements, unless otherwise specified, are the sum and substance of such statements as recalled by Plaintiff.

27. Ms. Johnson is the primary caregiver and financial supporter.

28. Ms. Johnson is not currently employed with CB&T.

29. Ms. Johnson has removed herself from the banking industry in its entirety due to her horrific experience with CB&T.

30. Ms. Johnson has been working professionally since she was 16 years old.

31. Upon educating herself at Grambling State University and Louisiana Tech Ms. Johnson began employment as a Supervisor with Willamette Industries in the wood products industry.

32. Ms. Johnson worked with Willamette Industries for four and a half years.

33. Ms. Johnson worked with major companies in the U.S throughout her career and has received a plethora of accolades.

## MS. JOHNSON'S RAPID SUCCESS WITH CB&T

34. Ms. Johnson began working as a Collector for CB&T in 2014.

35. In January 2015, Ms. Johnson was escalated to collecting on high risk difficult accounts at the direction of Manager Jason Gannon and Regional Manager/Site Leader Sadie Williams within months while others were not even after three to four years working as a Collector.

COMPLAINTJURY TRIAL REQUESTED - 5

36. Throughout her tenure at CB&T, in recognition for the success of the various business account queues she was responsible for managing, Ms. Johnson consistently received stellar performance reviews concerning her diligence, competence, exceptional organizational skills, and ability to enhance the profitability of the business and services that she managed. However, despite Ms. Johnson's accomplishments, CB&T failed to provide Ms. Johnson equal pay to the pay of males for work requiring equal skill, effort and responsibility, and which has been performed under similar working conditions.

37. Throughout her tenure at CB&T, Ms. Johnson has worked for three managers.

38. From January 2015 to February 2015, Ms. Johnson served as the lead Collector on her team by making out-bound calls, receiving calls, negotiating payments, initiating repossessions, offering extensions, offering payment options, consistently performing dangerous skips & chases.

39. During her tenure, Ms. Johnson assumed her role, as a Collector, at which time she began to report to Jason Gannon, Manager

**GANNON DISCRIMINATED AGAINST MS. JOHNSON FROM DAY 1**

40. At the time Ms. Johnson became a Collector Mr. Gannon immediately handed her a stack of approximately 50 forms and told her to start skipping not only her accounts, but accounts of co-workers as well.

41. Mr. Gannon began using foul language, sexually explicit gestures, and became visibly enraged when the lured behavior was not accepted; male counterparts accounts were worked by Mr. Gannon to ensure they received bonuses while hers were not.

Name Title

Eriel Alvarez, Collector II

"Darby" , Collector III

42. From the moment Ms. Johnson was assigned as Gannon's direct report, Gannon made it clear that she was NOT to challenge his lured behavior.

43. In Ms. Johnson's very first conversation with Gannon, he told

COMPLAINTJURY TRIAL REQUESTED - 6

her in a very off-putting manner, "I'm a dick!... ."

44. In the hopes of impressing upon Gannon that she was significantly qualified and knowledgeable, Ms. Johnson took the opportunity at this first meeting to tell Gannon about the value-add she could bring to the team on a day-to-day basis and the role of her vast customer service experience and skill set.

45. As Ms. Johnson spoke to Gannon on these very important items, Gannon exhibited visible boredom and was blatantly not engaged. Gannon had no interest in learning about Ms. Johnson or the value she could add to the team.

46. Beginning with their very first meeting, Gannon immediately made Ms. Johnson feel like a second-class citizen. Throughout the course of calendar year 2015, Gannon consistently and with increasing frequency excluded Ms. Johnson from emails to help improve her collection ratio that her male counterparts were included in.

.

47. As a woman that did not accept Gannon's lured behavior, racial intimidation, she therefore never stood an equal chance to succeed.

48. In their first conversation, Gannon was more interested in Ms. Johnson's appearance than her professional skills and acumen.

49. Gannon saw Ms. Johnson only as a woman and not as a colleague; and he made sure that she knew it.

50. Insultingly, in this first conversation, Gannon stopped Ms. Johnson twice to ask demeaning and ludicrous questions such as: "Have you colored your hair?", " How old are you?", and "Are you married?"

51. Surely Gannon would not ask those irrelevant questions if Ms. Johnson were a man.

52. Contrary to CB&T's purported "open door" policy and work ethic, shortly after Ms. Johnson began to report to Gannon, he became even more hostile by actually cursing on the production floor.

53. Amazingly, Ms. Johnson tried to ease the tension by brining snacks, treats, pleasantries to everyone to

COMPLAINTJURY TRIAL REQUESTED - 7

share with the team and others simply just to try to make for a more pleasant work environment.

.

54. Ms. Johnson, in particular, mentioned and complained about the the racial intimidation and nothing was done about it by Mr. Gannon correcting his behavior or by Management. Daily Gannon would yell out from across the room, when the Spanish speaking Collector Eriel Alvarez was speaking to the Spanish customers; Gannon would yell "Speaka English!" in a broken intimidating fake Spanish accent.

55. Despite repeated attempts to correct the situation via sending emails, speaking to other Managers, co-workers, and Sadie Williams directly, the issue was never addressed and continued daily.

56. Gannon treated Ms. Johnson more like a summer intern than an accomplished, experienced, and successful Collector with previous managerial experience with numerous companies.

57. Gannon disregarded Ms. Johnson's contributions, skills, efforts and responsibilities because she is a woman.

60. Gannon has a problem with being respectful to women and said so on several occasions.

58. Gannon has consistently failed and refused to mentor or encourage the promotion women up the ranks at CB&T.

59. Gannon, to Ms. Johnson's deliberate exclusion, spent time coaching others and her male counterparts regarding how to properly apply extensions, negotiate payments, and collect in order to bonus each month. Ms. Johnson never received one coaching session from Jason Gannon.

60. Gannon's selective and discriminatory behaviors were demeaning and demotivating to Ms. Johnson as a professional and are humiliating and demoralizing to Ms. Johnson as a manager of her own accounts.

**FAILED EFFORTS TO BREAK THROUGH GANNON'S DISCRIMINATORY ANIMUS**

61. Gannon has a long history of endearing himself exclusively to men in a "Gannon Bros-Only Club."

62. In an effort to dispel Gannon's discriminatory animus towards Ms. Johnson because she is a woman, Ms. Johnson reached out to Gannon on at least a monthly basis over the span of months during the calendar year 2015. Ms. Johnson took these actions in order to establish a rapport with her sexist and chauvinistic supervisor, and to try to explain to him how she can collaborate, add value, and

COMPLAINTJURY TRIAL REQUESTED - 8

grow the CB&T collection processes .

63. In response to her diligent efforts, and to her dismay, Gannon has either blown off Ms. Johnson or utterly ignored her overtures towards forging a professional relationship.

67. From day one, Gannon has never taken Ms. Johnson seriously – solely as a consequence of her gender.

68. While all of Gannon reports, with the exception of only Ms. Johnson, would meet with or at least speak to Gannon on at least a daily basis, Ms. Johnson was consistently and deliberately excluded from any such communications with her immediate supervisor.

69. Gannon's discriminatory treatment of Ms. Johnson is not only illustrative of unlawful gender discrimination; racial intimidation, it is also illustrative of poor management practices that results in, among other things, federal civil right violations.

70. For example, as a seasoned manager, Ms. Johnson has learned to maintain an "open-door" policy, which, in today's corporate environment, is expected of all managers. This means, without limitation, establishing a basis of trust with all direct reports and peers such that the lines of communication are, and remain, open.

71. Gannon failed and refused to treat Ms. Johnson with the degree of professionalism and courtesy that is warranted, and has been earned with, her position, knowledge, experience, and acumen.

72. Undeterred by CB&T's discrimination, Ms. Johnson, consistently outperformed her colleagues in peer and customer satisfaction and rankings.

73. In addition, Ms. Johnson prides herself on the consistent and positive peer and management reviews that she received throughout her tenure as a Collector working at CB&T.

74. Those periodic accolades via email and personal conversation regarding performance reviews clearly reflect the skills, attributes, and characteristics of Ms. Johnson, a team leader invested in her own philosophical and

COMPLAINTJURY TRIAL REQUESTED - 9

business model of : "Doing the Right Thing. Trusting and Teamwork.

Not accepting mediocrity only Winning and Leadership."

## MANAGEMENT CONDONES GANNON'S DISCRIMINATORY BEHAVIOR

75. Regretfully, Gannon's bias and discriminatory animus against women is known to,

and condoned by his peers, bosses and senior level management, General Manager Sadie Williams ("Sadie Williams"), further complicating the harm and discrimination

suffered by Ms. Johnson.

76. To Ms. Johnson's dismay, and to the dismay of all other women trying to work their

way up CB&T's ranks, CB&T seems more concerned about offending the perpetration of

discrimination than the discrimination itself and thus, would rather protect and defend Gannon

than reprimand, train, or counsel him.

77. Despite Ms. Johnson's optimistic efforts to "win" Gannon's approval or even his

interest, Gannon has never seen fit to learn about Ms. Johnson, her knowledge, her team engagement skills, her mentees,

her extensive customer relationships, her ability to cross-sell the bank as a culture carrier

her extensive knowledge of her customer , her accounts, and the methods she

uses to maximize revenue on all accounts by consistently performing skips and chases on average of 25-30 extra hours per week of travel time.

## MS. JOHNSON ELEVATES HER CONCERNS OF UNLAWFUL ACTIONS TO MANAGEMENT, TO NO AVAIL

78. Consistent with CB&T policies and procedures, Ms. Johnson elevated her concerns

regarding Gannon's discriminatory behaviors to Gannon's manager, Sadie Williams; as well as the

Human Resources via email solicited by CB&T during an investigation period of the Baton Rouge, La site.

79. Over the course of several months prior to filing this action, Ms. Johnson met

with Sadie Williams in face-to-face meetings on at least four occasions where her concerns of Gannon's

discriminatory treatment was discussed.

80. Separately, Ms. Johnson met with DM Andrea Brown on at least four occasions and Manager Kendra Toussant for the sole

COMPLAINTJURY TRIAL REQUESTED - 10

purpose of discussing Gannon's discriminatory, lured behavior animus towards her.

81. In this day and age, to even have to complain about racial and gender discrimination is humiliating enough, let alone to recount the embarrassing and demoralizing treatment Ms. Johnson has endured; especially for someone at her level, tenure, and experience.

82. In each of her meetings or emails with Sadie Williams and Human Resources, Ms. Johnson complained of Gannon's unwarranted bias and aversion to having any rapport with Ms. Johnson because she is female and with women in general.

83. Ms. Johnson also complained about the consequences of Gannon's discriminatory animus, particularly with respect to the unjustified and quite significant pay disparities between her and her similarly situated peers; currently the other Gannon reports, all of whom are males.

84. In each of these meetings with Sadie Williams and Human Resources, Ms. Johnson also discussed her knowledge of, and bearing witness to, the inappropriate, unethical, illegal behaviors in violation of various rules, regulations, laws and industry standards Ms. Johnson has witnessed committed by Jason Gannon, CB&T, and others.

85. Ms. Johnson's complaints of discrimination and retaliation fell on deaf ears.

86. Despite multiple meetings discussing Ms. Johnson's complaints of these unlawful actions, CB&T has not only failed to investigate any of Ms. Johnson's complaints or take any remedial actions to address the rampant racial and gender-based discrimination and compliance issues but failed to intervene when Ms. Johnson was then retaliated against for her lawful complaints.

87. To date, CB&T has retaliated against Ms. Johnson by not paying wages owed, forcing her to look for another job, file suit, and attempted to chastise her about an account that she placed a promise on with the customers' verbal consent.

**MS. JOHNSON IS A VICTIM OF EGREGIOUS PAY DISPARITY, LOSS OF WAGES, RACIAL INTIMIDATION, AND SEXUAL HARASSMENT**

**88.  ILLEGAL EXTENSIONS BY JASON GANNON AND OTHERS EXPOSES CB&T TO SIGNIFICANT LIABILITY**-Ms. Johnson has a significant amount of undeniable documentation via emailed complaints, improper disposal of credit cards and mishandling customer Personal Protected Information, HIPPA violations, Banking Industry Standards violations, Federal unlawful activity, racial intimidation, sexual harassment, child labor law violations, that all went unaddressed to the detriment of

COMPLAINTJURY TRIAL REQUESTED - 11

Ms. Johnson is still suffering through post-traumatic stress from having a gun pointed at her head while on the job. The incident was compared to another Collector who walked up to a home while doing a chase directly after a Murder Suicide; that he could have easily fallen as a fatal victim while on the job with CB&T; and dismissed as nothing.

## 89. MS. JOHNSON WAS RETALIATED AGAINST FOR HER GOOD FAITH COMPLAINTS AND CB&T UNLAWFUL BEHAVIORS AND FORCED TO LEAVE HER POSITION WITH CB&T

### ACTIVITIES

#1 CB&T first stated they had no idea of any skips or chases performed

#2 I provided emphatic proof CB&T was very much aware of skips and chases performed

#3 CB&T then admits in fact they were aware of skips & chases performed

#4 CB&T violated Federal and banking laws by not properly disposing of and mishandling customers' credit card information (employees were allowed to make copies, copies were disposed of in the outside Advocate garbage cans, bathrooms, and left on Manager's desks unguarded on a consistent basis)

#5 Managers and employees violated innocent consumer trust by altering their contracts in order to bonus monthly. This continued until the company recognized excessive amounts of Extensions being given monthly and added 'excessive extensions' as a negative caveat to the bonus program

#6 I have documented proof that I refused to write down customer credit card information from day one when ordered to do so when the payment system ORCC was taken down for scheduled maintenance days

#7 I also had a conversation with Manager Nelia Lovings regarding my refusal to write down customer credit card information and the improper handling while still employed with CB&T this was shared via email with another employee by the name of Jason Phillips

#8 Sadie and upper level Manager TJ 'Theresa Joyce also called me into the office to discuss my written emailed complaints that I reported prior to my departure from CB&T

#9 Again, I was called into Sadie's office after I wrote a long, direct, and detailed email regarding my complaints and my teammates were fully aware that I was being called to the office; because, I sent them the email for safe keeping

#10 IT person Darren came to my desk the next day and told me that I would have to start putting my picture on my CB&T email correspondence. Keosha Franklin a current CB&T employee stated it was because of the email I forwarded to her as well regarding my complaints and upper management now wants to put a face with the complaints they have received.

#11 Due to the lack of training Ms. Johnson sometimes while babysitting took children with her who placed the envelopes in the mailboxes for CB&T, other times friends, her significant other for safety & protection during several skips after she had a gun pulled on her, in which she no longer allowed the children to ride with her.

COMPLAINTJURY TRIAL REQUESTED - 12

## COUNT ONE

## (DISCRIMINATION ON THE BASIS OF GENDER AND RACE UNDER FEDERAL & STATE STATUES)

90. Plaintiff repeats, re-alleges, and incorporates by reference each and every allegation previously made herein as if the same were more fully set forth at length herein.

91. Defendant's discriminatory behavior and then retaliatory forced resignation of Plaintiff's employment were made as a direct result of Plaintiff's gender, female, and show an animus of gender bias and sexual harassment.

92. Defendant's animus towards Plaintiff's gender, female, is revealed in instances where similarly situated male employees were treated differently than Plaintiff in respect to of their terms, conditions, and privileges of employment.

93. As a result of Defendant's actions, Plaintiff is unable to return to comparable employment.

94. The aforementioned acts of Defendant constitute unlawful discrimination against Plaintiff in the terms, conditions and privileges of her employment because of her gender and race in retaliation against her in violation of the provisions of the LACHRL.

95. As a proximate result of Defendant's aforementioned sex discrimination and racial discrimination against Plaintiff, Plaintiff has and will continue to suffer substantial losses, including the loss of past and future earnings, and other employment benefits.

96. As a further proximate result of Defendant's actions, Plaintiff has and will continue to suffer irreparable and significant damage to her personal and professional good name and reputation.

97. As a further proximate result of Defendant's actions taken because of Plaintiff's sex, Plaintiff has and will continue to suffer severe and lasting embarrassment, humiliation and anguish and other incidental and consequential damages and expenses.

98. As a result of the foregoing, Plaintiff is entitled to recover from Defendant an amount equal to the value of all compensation to be earned by Plaintiff had her employment not

COMPLAINTJURY TRIAL REQUESTED - 13

been interfered with, including all to be earned salary and bonuses, benefit payments, profit sharing, costs, attorney's fees and prejudgment interest at no less than 9%.

99. As a result of the foregoing acts, Plaintiff is entitled to recover an amount in compensatory damages to be determined at trial from Defendant, jointly and severally, in addition to all other amounts sought herein.

100. In committing the acts alleged herein, Defendant acted in an outrageous and malicious manner with intent, oppression, gross negligence, malice, wanton disregard and indifference for Plaintiff's protected civil rights, as part of a continuing pattern of conduct, and Plaintiff is entitled to punitive damages to adequately punish Defendant and to deter Defendant from continuing and repeating such conduct in the future.

## COUNT TWO

### (EPA Against CB&T)

101. Plaintiff repeats, re-alleges, and incorporates by reference each and every allegation previously made herein as if the same were more fully set forth at length herein.

102. By the acts and practices described above, defendant CB&T, in violation of the EPA, has discriminated against plaintiff by not addressing reported sexual harassment, gender bias, assisting, coaching, and evaluating male employees to ensure they receive bonuses and subsequently higher wages than plaintiff was paid for equal work in a job which required equal skill, effort, and responsibility, and which was performed under similar working conditions.

103. Defendant CB&T knew that its actions constituted unlawful violation of equal pay laws and/or showed reckless disregard for plaintiff's statutorily protected rights.

104. Plaintiff suffered lost wages as a result of CB&T's willful and unlawful conduct.

COMPLAINTJURY TRIAL REQUESTED - 14

**COUNT THREE**

(Discrimination Under the Labor Law (Against CB&T)

105. Plaintiff repeats, re-alleges, and incorporates by reference each and every

allegation previously made herein as if the same were more fully set forth at length herein.

106. By the acts and practices described above, defendant CB&T has discriminated

against plaintiff by paying male employees higher wages than plaintiff was paid for equal work

in a job, the performance of which required equal skill, effort, and responsibility, and which was

performed under similar working conditions, in violation of the Louisiana State Labor Law.

107. Defendant CB&T knew that its actions constituted unlawful violation of Civil Rights

laws and/or showed reckless disregard for plaintiff s statutori1y protected rights.

108. Plaintiff suffered lost wages, mental anguish, and continues to suffer from post-traumatic nightmares
as a result of CB&T's willful and unlawful practices

**COUNT FOUR**

(Louisiana Labor Law § 215 - Retaliation)

109. Plaintiff repeats, re-alleges, and incorporates by reference each and every

allegation previously made herein as if the same were more fully set forth at length herein.

110. In retaliation for Ms. Johnson 's complaints regarding CB&T's unlawful employment

practices, CB&T took adverse employment actions against them.

111. Among other things, CB&T failed to provide Ms. Johnson equal pay or promotional

opportunities after they complained about CB&T's gender discrimination, sexual harassment, over-times
wages not being paid while performing skips & chases, and racial intimidation. CB&T ultimately

forced Ms. Johnson to terminate her employment.

112. By reason of CB&T's conduct as alleged herein, Ms. Johnson is entitled to all remedies

available under the Louisiana Equal Pay Law.

COMPLAINTJURY TRIAL REQUESTED - 15

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court order the following relief in favor of

Plaintiff:

I. A Declaratory Judgment declaring that the acts complained of herein violate the

rights of Plaintiff as guaranteed under applicable Federal Law;

II. A judgment granting equitable relief directing Defendant to cease and desist from

exposing Plaintiff to discrimination and retaliation;

III. A judgment directing Defendant to reimburse and make Plaintiff whole for any

and all earnings, including bonus payments, she would have received but for Defendant's

discriminatory treatment and unlawful forced dismissal, including but not limited to, back pay,

double back pay, contractual damages and pension benefits;

IV. A judgment awarding Plaintiff compensatory damages for mental anguish, loss of

dignity, humiliation, and injury to livelihood in an amount that is fair, just, and reasonable,

to be determined at trial, including reasonable attorneys' fees, as provided under

applicable law.

V. A judgment awarding Plaintiff double back pay damages for Defendant's

intentional retaliation of Plaintiff;

VI. A judgment awarding Plaintiff front pay;

VII. A judgment awarding Plaintiff double back pay;

VIII. A judgment awarding Plaintiff contract damages;

IX. A judgment awarding Plaintiff punitive damages;

X. An award of prejudgment interest, costs and attorney's fees; and

XI. Such other and further relief that the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues triable by jury in this action.

Dated: Baton Rouge, Louisiana

September 29, 2016

Respectfully submitted,

Sherri Johnson

By _____

Sherri Johnson

Qui tam

1680 O'Neal Lane

Baton Rouge, Louisiana 70810

Tel.: (972) 821-8459

Sherrimm1023@gmail.com

Dated this 29 of September, 2016.

COMPLAINTJURY TRIAL REQUESTED - 17